**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

NANCY DAVIS and SHIRLEY TOLIVER,  )
                                  )
      Plaintiffs,                )
                                  )
      v.                         )  Civil Action No.  3:10cv68-WHA
                                  )          (wo)
WAL-MART STORES, INC.,            )
                                  )
      Defendant.                 )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendant, Wal-Mart Stores East, LP (Doc. #15).

The Plaintiffs filed a Complaint in this case alleging that Wal-Mart has denied them overtime compensation in violation of the federal Fair Labor Standards Act ("FLSA").

The Defendant has moved for summary judgment on the basis that the Plaintiffs fall within an exemption from overtime pay under the FLSA.

For the reasons to be discussed, the Motion for Summary Judgment is due to be DENIED.

### II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. FACTS

The submissions of the parties establish the following facts, viewed in a light most

favorable to the non-movant:

The facts of this case concern the job duties of the Plaintiffs. Plaintiff Nancy Davis was employed at the Wal-Mart in Opelika, Alabama as a salaried assistant manager from June of 2006 until September 2009. Davis states that during her employment she performed such tasks as stocking, acting as cashier, sweeping, mopping, cleaning, unloading trucks, bringing in shopping carts, and doing price checks. Plaintiff Shirley Toliver was employed with the Wal-Mart store in Opelika from August 2001 to May 20, 2009. She also states that she performed tasks such as stocking, running the cash register, sweeping, mopping, cleaning, loading trucks, pulling pallets, bringing in shopping carts and performing price checks. The Plaintiffs have testified in their depositions that these tasks comprised 80-90 % of their work duties. Wal-Mart has presented documentary and deposition evidence that Davis and Toliver also engaged in managerial tasks, including delegation of duties, interviewing and hiring applicants, coaching associates, evaluating associates, and terminating associates.

## IV. DISCUSSION

As a general rule, the FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. See 29 U.S.C. § 207(a)(1). The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1). The exemption is an affirmative defense, as to which the employer has the burden of proof. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995).

In this case, Wal-Mart has moved for summary judgment on the bases that Davis and Toliver fell within the executive and the administrative exemptions to the FLSA overtime

requirement.

## Executive Exemption

The Code of Federal Regulations defines executive employees as those (1) who receive compensation "of not less than $455 per week"; (2) whose "primary duty" is management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

There is apparently no dispute that during the relevant period the Plaintiffs made more than $455 a week and, therefore, meet the first requirement for the executive exemption. The Plaintiffs, however, dispute that any of the remaining factors are met. The court begins with the primary duty requirement.

A primary duty is "the principal, main, major or most important duty that the employee performs," and the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). The relevant factors for this analysis are (1) the relative importance of the management duties as compared with other types of duties; (2) the amount of time spent performing management duties; (3) the employee's relative freedom from direct supervision; (4) and the relationship between the employee's salary and the wages paid to other employees for the kind of non-management work performed by the employee. *Id.*

In a case relied upon by Davis and Toliver, the Eleventh Circuit has engaged in a lengthy

analysis of the primary duty requirement in the context of store managers of Family Dollar Stores, a retail establishment. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008).[1] In *Morgan*, the plaintiffs were store managers who spent 80 to 90 % of their time performing manual labor tasks such as stocking shelves, running cash registers, unloading trucks, and cleaning. *Id.* at 1270. They were also assigned tasks such as completing paper work and making bank deposits, but those tasks were strictly prescribed. In evaluating the claim that the executive exemption did not apply to these managers, the court emphasized that at the executive exemption to FLSA overtime pay is to be narrowly construed because the Supreme Court has directed that the exemption be applied only to plaintiffs who fall "clearly and unmistakably within the terms and spirit of the exemption." *Id.* at 1269 (citation omitted). The court further noted that the inquiry is fact-intensive, and if there is evidence "on both sides of the question," the facts should be determined by a jury. *Id.* The factor of time spent on manual, nonexempt work, however, did not establish that the plaintiffs were nonexempt. *Id.* Instead, the court found that the jury's determination that the managers were nonexempt was supported not just by the amount of time spent performing nonexempt work, but also by evidence that non-managerial tasks were of "equal or greater importance to the store's functioning and success." *Id.* The court found significant that the employer described manual labor performed on delivery day as an "essential function" of the position. *Id.* The court also concluded that the evidence of

---

[1] Wal-Mart points out that in *Diaz v. Team Oney, Inc.*, 291 Fed. Appx. 947 (11th Cir. 2008), an assistant manager performing manual labor was found to be exempt. In that unpublished opinion, there was evidence that the managerial functions were the most important, and that the plaintiff made recommendations as to hiring and firing, conducted the first interview of applicants, and was in charge of the store for the majority of his shifts, except when the store manager was present for a few hours. *Id.* at *3. That case is distinguishable because of the questions of fact in this case, to be discussed herein.

little time spent in discretionary matters, little freedom from direct supervision, and the difference between managerial and other wages supported the jury's finding of non-exempt work as the primary duty. *Id.* at 1270-71.  As Wal-Mart points out, the court distinguished other courts' opinions on the basis that in *Morgan* the manual labor was not performed concurrently with managerial duties.  *Id.* at 1272-73.

Davis and Toliver contend that here, as in *Morgan*, all four of the primary duty factors weigh in their favor in this case.   With respect to managerial duties, Davis and Toliver contend that they spent the vast majority of their time performing non-managerial tasks, and that the managerial tasks they performed were relatively less important than their non-managerial duties. The court begins with the factor of the amount of time spent performing management duties.

    1.  Time Spent Performing Management Duties

Davis and Toliver have testified that 80-90 % of their time was spent performing nonmanagerial tasks.  Davis Dep. at page 125: 19-126: 4.  Davis stated that she would run the cash register for 15 or 20 minutes at a time all day long, three out of five days a week, on day and night shifts, and that she found herself doing sweeping and cleaning, particularly on the third shift.  *Id.* at page 128: 18-129:16.  Toliver testified that she performed the same tasks testified to by Davis, adding that sometimes she would be a cashier for three hours at a time.  Toliver Dep. at pages 95: 16-96: 4, 17-11-19.

While Wal-Mart characterizes this testimony as self-serving, the court must accept the Plaintiffs' testimony that they performed the sort of tasks described 80-90 % of the time.   Those tasks testified to are not considered managerial duties.

Managerial duties are defined by the C.F.R. to include interviewing, selecting and

training employees, directing the work of employees, maintaining sales records, appraising employees' productivity and efficiency, handling employee complaints and grievances, disciplining employees, planning work, determining techniques to be used, apportioning work, determining merchandise to be bought and sold, controlling distribution of merchandise, providing for safety and security of employees or property, planning and controlling the budget, and implementing and monitoring legal compliance measures.  29 C.F.R. § 541.102.  Clearly the tasks which Davis and Toliver have identified as comprising 80-90 % of their working time do not fall within these examples of managerial tasks.  The C.F.R. also states, however, that

> Occasional, infrequently recurring tasks that cannot practicably be performed by nonexempt employees, but are the means for an exempt employee to properly carry out exempt functions and responsibilities, are considered exempt work. The following factors should be considered in determining whether such work is exempt work: Whether the same work is performed by any of the exempt employee's subordinates; practicability of delegating the work to a nonexempt employee; whether the exempt employee performs the task frequently or occasionally; and existence of an industry practice for the exempt employee to perform the task.

29 C.F.R. § 541.707.

The Plaintiffs argue that the extent to which they performed nonmanagerial tasks meant that the tasks cannot be considered to be exempt work.  Davis and Toliver state that their time spent doing the managerial duties of performance evaluation was minimal, averaging 10 to 15 minutes.  Toliver Dep. at page 98: 8-16.  Davis described her duties as running the register, pulling pallets, unloading trucks, working freight by pulling it off a truck and putting it on the shelf, zoning by fronting merchandise, and cleaning.  Davis Dep. at 156: 3-10.  Given the testimony of the extent of their nonmanagerial duties, the court concludes that a reasonable jury

could conclude that the tasks which, according to the Plaintiffs' testimony, comprised 80-90 % of their work, were more than occasional, infrequently recurring tasks and, therefore, were nonexempt tasks.

Wal-Mart argues that the Plaintiffs' choice to perform nonexempt tasks, rather than to delegate those tasks, because they were ultimately responsible for those tasks, does not make them nonexempt. Wal-Mart points to the C.F.R. and argues that concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption. *See* 29 C.F.R. §106(a). That C.F.R. section states, however, that if exempt and nonexempt work occurs concurrently, the exemption can still apply, if the requirements for the exemption are otherwise met. *Id.* The C.F.R. offers as an example an assistant manager who supervises employees and serves customers at the same time, without losing the executive exemption. § 541.106(b). The C.F.R. draws a distinction between persons who make the decision of when to perform nonexempt duties and those directed to perform exempt work. § 541.106(a).

The Eleventh Circuit relied on such a distinction in *Morgan*. The court distinguished cases from other courts which had given less weight to plaintiffs' estimates of time performed on nonexempt tasks because those plaintiffs concurrently performed exempt tasks. *Morgan*, 551 F.3d at 1272. The court explained that the amount of manual labor performed by the managers in *Morgan* overwhelmed their capacity to perform managerial duties concurrently during store hours. *Morgan*, 551 F.3d at 1272. The court further explained that management duties could not be performed concurrently because, for example, "a store manager unloading a truck and stocking the storeroom was not concurrently supervising the cashier out front." *Id.* at 1273. The court noted that many of the tasks were performed before and after the store closed. *Id.* at 1272.

The court concluded that the jury "may well have given more weight to the Plaintiffs' evidence that they spent 80 to 90 % of their time solely on nonexempt work." *Id.*

Davis stated in her deposition that she would receive managerial notes from the store manager which would tell her tasks that needed to be accomplished during a shift. *Id.* at page 126:15-127:14. She explained that "[w]e were told what to do, either find somebody to do it or do it yourself." *Id.* at page 126: 15-16. Davis explained that she was assigned duties by the store manager or co-manager in the shift notes that told her what they wanted done. *Id.* at 150:8-22. If there were minimal associates working, she had to perform the manual labor tasks herself. *Id.* at page 150: 17-151:17. Davis gave as an example that if two or three trucks came in carrying freight during the third shift, she would have to go to that department. *Id.* at 151:10-17. She further explained that she would get in trouble for not getting the tasks done. *Id.* at 151:21-22. Davis testified that she performed sweeping, mopping, and cleaning duties "mostly on third shift" because there were not "enough associates to get everything done that needed to be done." *Id.* at 129: 8-16. She also stated that she has been told to scrape dirt from under shelves with a scraper on third shift. *Id.* at 156:18-157. Davis also testified that she would stay on past the end of her shift on some occasions so that she averaged 54 to 65 hours per week. *Id.* at page 110: 13-19.[2]

According to the Plaintiffs' evidence, they were not responsible for the scheduling of

---

[2] The court recognizes that Davis agreed in her deposition that "all the time you were doing this nonexempt work you were also doing the job duties that we've talked about before, you were making job offers and doing interviews" and coaching employees. Davis Dep. at page 130: 21-131:14. The reasonable inference to be drawn from these questions, however, given the testimony on the nature of the manual tasks, is that these tasks were occurring during the same shifts, but not necessarily during the same time that the Plaintiffs were sweeping, unloading freight, working the cash register, etc.

associates. The scheduling of employees was conducted by co-Manager Ken King. King explained in his deposition that he set the schedules based on a budget he was provided by corporate headquarters, which came down through the regional and district manager. King Dep. at page 12. Although King also stated that assistant managers also set schedules, in her deposition, Toliver disputed that she made schedules, and stated that the co-manager made the schedules. Toliver Dep. at page 20: 8-12, 21-3.

While Wal-Mart has contended that the Plaintiffs chose to perform nonmanagerial tasks instead of delegating those tasks, viewing the evidence in a light most favorable to the non-movants, the Plaintiffs were directed to perform tasks even in the face of inadequate staffing levels. Furthermore, the nonexempt tasks performed by Davis and Toliver in this case were similar to those in *Morgan*, such as unloading of freight, which would not allow for the supervision of associates in other sections of the store. The court concludes, therefore, that Wal-Mart has not conclusively shown that the nonexempt tasks were performed concurrently with exempt tasks, for purposes of its affirmative defense. Here, as in *Morgan*, the court concludes that there is sufficient evidence to support the Plaintiffs' estimate that 80 % to 90 % of their work was nonexempt work.

The C.F.R. states that the amount of time spent on managerial tasks "can be a useful guide in determining whether exempt work is the primary duty of an employee," but it is not the sole test. § 541.700(b). A person who spends more than 50 percent of her time performing exempt work generally will satisfy the primary duty requirement, but "employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

Given the Plaintiffs' evidence, the factor of the amount of time spent on nonexempt tasks, while not dispositive, weighs against a finding of exempt work as the primary duty in this case.  *See Morgan*, 551 F.3d at 1270.

2.  Relative Importance of Managerial Duties

The next primary duty factor to be examined is the relative importance of managerial duties as compared to other duties.  29 C.F.R. § 541.700(a).

Wal-Mart has submitted multiple records evidencing managerial tasks, such as coaching for improvement of hourly associates, performance evaluations, and job offers. Wal-Mart states that Davis and Toliver managed recognized departments during the day shift, and were "in charge"[3] of the store on night shifts.  Wal-Mart further states that these duties were important, as they were evaluated in the Plaintiffs' performance evaluations.

Davis and Toliver do not dispute that they coached associate employees, evaluated performance of associates, checked the status of inventory, and monitored store conditions.  See Doc. #20 at page 15.  As noted above, however, they state their time spent doing managerial duties, for example, employee evaluation, was minimal, consisting of 10 to 15 minutes, and that these duties were secondary to their primary duties of waiting on customers, stocking shelves, cleaning, merchandising, unloading delivery trucks, and bringing in shopping carts.  As further evidence of the relative importance of the nonmanagerial tasks, the Plaintiffs point out that in the job description's listing of physical activities necessary to perform essential job functions an assistant manager is required to move, lift, carry, and place merchandise and supplies weighing up to 25 pounds without assistance, and to grasp, turn, and manipulate objects of varying size

---

[3] The Eleventh Circuit has made it clear that being a manager "in charge," is not dispositive. *Morgan*, 551 F.3d at 1271-72.

and weight, requiring fine motor skills and hand-eye coordination. As described extensively above, there is evidence that Davis and Toliver were required to perform manual tasks also performed by associates, and that the budget-based schedule, which left the store understaffed at times, required them to perform manual labor tasks.

In *Morgan*, the court concluded that nonmanagerial duties were more important because the essential job functions as listed by the employer required that the managers do the same work as stock clerks and cashiers, and that a large amount of manual labor by managers was a key to the business model, given the limited payroll and large amount of labor that had to be performed. *Morgan*, 551 F.2d at 1270.

Viewing the evidence presented in a light most favorable to the nonmovant, the court concludes that here, as in *Morgan*, there is enough evidence for a jury to find not only that nonmanagerial tasks consumed 80-90 % of Davis and Toliver's time, but also that the nonmanagerial work was relatively more important than managerial work.

3. Relative freedom from Direct Supervision

As to the analytical factor of relative freedom from direct supervision, Davis and Toliver argue that not only were they governed by policies put in place by Wal-Mart at its corporate headquarters, but also policies created, implemented, and enforced by the store manager or co-manager who were present in the store daily. For instance, Toliver states in her deposition that there was a time during which assistant managers set the schedules, but during the relevant time period, the co-manager set schedules. Toliver Dep. at page 20: 4-12. She also explained that she thought it should be within her discretion to decide whom to interview for an position which was open, but that she was told whom to choose at times. *Id.* at page 78: 3-12. She testified that the

rate of starting pay was dictated by policy and that she was not allowed to give raises. *Id.* at 107:10-23.

Davis testified that when the store manager and co-manager were present in the store, they were supervising the assistant supervisors and were supervising the hourly associates. Davis Dep. at page 148: 9-17. With respect to the placement of merchandise, Davis testified that the home office, store manager, or co-manager directed where to place merchandise, and that placement was dictated by planograms. *Id.* at page 152:12 -153:4. Even on the third shift, when Wal-Mart insists the Plaintiffs were "in charge" of the store, as set out above, upper management gave instructions of what was to be done, down to tasks such as scraping dirt from beneath shelves.

In *Morgan*, the Eleventh Circuit found that the factor of freedom from supervision weighed in favor of a finding of the primary duty being nonexempt work, because managers above the level of the store managers were responsible for enforcing detailed store operating policies, closely reviewed inventory, closely monitored the payroll, controlled employee hourly rates and pay raises, routinely sent to-do lists and emails with instructions to the managers, closely supervised displays, and closely supervised store operations. *Morgan*, 551 F.3d at 1271. When viewed in a light most favorable to the non-movants, many of the same considerations present in *Morgan*, such as instructions from upper management as to tasks to perform, and pay rates and budget-controlled staffing by upper management, are present in this case as well. Therefore, the court concludes that this factor also weighs in Davis and Toliver's favor.

4. Relative wages

As to the fourth primary duty factor, the relationship between employee's salary and

wages paid to other employees for the kind of nonexempt work performed by the employee, although Davis and Toliver have argued, correctly, that the court should account for the extra hours they worked in comparing salaries and wages, the court has not been pointed to evidence of the amount of hourly wages paid for the same nonexempt work duties. Therefore, the court cannot conclude that this factor weighs in favor of the Plaintiffs in this case.

Considering together the evidence of the relative importance of the management duties as compared with other types of duties, the amount of time spent performing management duties, the employee's relative freedom from direct supervision, and the lack of evidence of relative wages, along with the fact that there is evidence that the Plaintiffs performed several types of managerial duties, it appears to the court there is a close question as to whether Davis and Toliver had primarily nonexempt duties. While the *Morgan* case is helpful in applying the analytical factors and considerations set forth in the C.F.R., the *Morgan* decision is also distinguishable to the extent that the evidence of managerial responsibilities of the plaintiffs in that case was somewhat limited. Bearing in mind that Wal-Mart has the burden of proof on its affirmative defense, and viewing the evidence in a light most favorable to the non-movants, however, the court concludes that there is sufficient evidence to create a question of fact as to whether the Plaintiffs' primary duties were managerial. Having concluded that there are questions of fact which preclude judgment in Wal-Mart's favor on the exemption requirement of primary duty, the court need not address the remaining requirements for application of the executive exemption.

## Administrative Exemption

Finally, Wal Mart states that the Plaintiffs fall within the administrative exemption. The

Plaintiffs state that Wal Mart did not plead this affirmative defense in the Answer, and that the Plaintiffs spent 80-90 % of their time performing non-managerial labor, and so the administrative exemption fails.  Wal-Mart states in its reply that its Answer refers to a statutory section which encompasses both the executive and administrative exemption, and that the same analysis applies to the executive and administrative exemption.[4]   Having concluded that there are questions of fact with respect to the executive exemption, the court concludes that summary judgment is due to be DENIED on the administrative affirmative defense as well.

## V. CONCLUSION

As discussed above, Wal-Mart has moved for summary judgment on the basis of affirmative defenses, which this court is directed to construe narrowly.  The court must conclude, viewing the evidence in a light most favorable to the non-movants, that there is a question of fact as to whether the Plaintiffs' job duties at Wal-Mart were primarily exempt, managerial duties.  Given that question, the court cannot grant summary judgment in Wal-Mart's favor on its affirmative defenses.  Accordingly, the Motion for Summary Judgment is due to be and is hereby ORDERED DENIED.

Done this 13th day of September, 2010.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The administrative exemption requires that the employee have a salary or not less than $455 a week, and have a primary duty of non-manual work related to management and the exercise of discretion and independent judgment.  29 C.F.R. § 541.200.